[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Russell and Katherine Hartt (the "Hartts"), have brought this action against the defendant, Rosalind Schwartz, Executrix of the Estate of Eli Schwartz ("Schwartz"),[1] for cleanup costs and other direct and indirect damages resulting from an alleged failure to comply with Connecticut's Hazardous Waste Transfer Act, General Statutes § 22a-134, et seq., and alleged contamination on certain property conveyed to them by Schwartz on March 14, 1986. The Hartts' original complaint contained two counts against Schwartz as well as six counts against other defendants which are not at issue for purposes of this motion. The operative Fourth Amended Complaint added four new claims against Schwartz, one of which has since been stricken.
Many of the basic facts underlying this case are not in dispute. In 1960, Schwartz purchased the property in question, CT Page 8820 constructed a building on a portion of it (1209 Foxon Road), and operated Kopkind's Hardware there for many years. In 1967, Schwartz added an extension to the building which contained two units known as 1211 and 1213 Foxon Road. The 1213 Foxon Road portion was utilized by Mac's Dry Cleaners ("Mac's") from 1967 to 1978. On March 14, 1986, the Hartts purchased the entire property from Schwartz.
On June 12, 1990, the Connecticut Department of Environmental Protection ("DEP") notified the Hartts and others that contamination originating from their property had migrated off-site, contaminating residential drinking water and irrigation wells. The DEP identified the source of the contamination as Mac's, the former dry cleaning business which had operated there prior to the Hartts' purchase. Because of the Hartts' status as current landowners and without regard to fault, the DEP issued Administrative Order No. WP 5018, dated August 6, 1991, obligating the Hartts to investigate both on and off-site contamination and to design and implement a remediation plan under DEP oversight. This lawsuit followed.
The essence of the Hartts' claim is that Mac's Dry Cleaners produced hazardous wastes and that Schwartz had an obligation under the Transfer Act to disclose the condition of the site prior to conveying it to them. They contend that this is so despite the fact that Mac's ceased operations seven years prior to the adoption of the Transfer Act and eight years prior to the conveyance of the property. The principal legal issue at the present moment is whether the portion of the property located at 1213 Foxon road housed an "establishment" within the meaning of the Transfer Act.[2] If it is not, Schwartz would not have had a duty to disclose, could not have violated the Transfer Act, and would be entitled to summary judgment.
Schwartz now seeks summary judgment, alleging that no material factual issues are in dispute and that she is entitled to judgment as a matter of law because (1) there can be no liability under the 1985 Transfer Act (Count One); (2) the undisputed facts show that there can be no cause of action based on fraudulent nondisclosure (Count Two); (3) there was no duty on the part of Schwartz to supervise his tenants' activities (Count Three); (4) there was no negligence by Schwartz, a prerequisite for cost recovery under CGS § 22a-452 (Count Four); (5) there can be no liability under the Connecticut Environmental Protection Act ("CEPA") (Count Five); and (6) all five counts are CT Page 8821 time barred.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,11-12; Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, Inc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v.Waterbury House Wrecking Co., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitzv. Mutual Construction Co., 154 Conn. 607, 613 (1967), quotingBoyce v. Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D.Conn. 1962); Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984). CT Page 8822
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986), cited in Salomon v.Krusiewicz, 14 CLT 456 p. 31, 3 CSCR 84a (Super.Ct., New Britain, 10/6/88).
Count I: Applicability of The Transfer Act
The most significant legal issue raised by Schwartz is whether the 1986 conveyance of the property from Schwartz to the Hartts is subject to General Statutes § 22a-134 et seq, which requires a transferor of real property to provide a negative declaration to a transferee. A negative declaration is:
 a written declaration on a form prescribed by the commissioner stating (1) that there has been no discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste on-site, or that any such discharge, spillage, uncontrolled loss, seepage or filtration has been cleaned up in accordance with procedures approved by the commissioner or determined by him to pose no threat to human health or safety or the environment which would warrant containment and removal or other mitigation measures and (2) that any hazardous waste which remains on-site is being managed in accordance with chapters 445 and 446k of the general statutes and regulations adopted thereunder.
It is undisputed that Schwartz did not provide such a declaration in connection with the transfer of the Foxon Road properties.
If, as the result of existing hazardous waste at a site, the transferor is unable to provide a negative declaration, the Transfer Act requires him to certify to the DEP that "he shall contain, remove, or otherwise mitigate the effects of any discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste on-site in accordance with procedures and a time schedule approved by the Commissioner pursuant to an order, stipulated judgment or consent agreement." P.A. 85-568, § 3 (c). It is also undisputed that Schwartz did not do this.
Schwartz points out that the 1985 Transfer Act defined CT Page 8823 "establishment" in the present tense, i.e. as any establishment which "generates more than 100 kilograms of hazardous waste per month . . ." (emphasis added). The Act was amended effective October 1, 1987 to specifically include within the definition of "establishment" operations that had been in existence as of May 1, 1967. It also specifically included dry cleaning, furniture stripping, painting and auto body operations. Public Act 87-475 § 1, eff. Oct. 1, 1987.[3] because the sale of the property occurred on March 14, 1986, prior to the amendment, Schwartz contends that only the 1985 version of the Transfer Act can be applicable. The Hartts do not argue that the specific inclusion of dry cleaning establishments by name should be applied retroactively, but they do claim that the specification of the May 1, 1967 starting date for the definition of "establishment" was a mere clarification of the Act's original language and should be given retroactive effect, making it applicable to the transfer of property in this case. "The general rule is that when a legislative act is intended to clarify existing law it necessarily has retroactive effect." (Citation omitted; internal quotation marks omitted.) Reid v. Zoning Board of Appeals,235 Conn. 850, 859 n. 5, 670 A.2d 1271 (1996).
There is some authority for Schwartz' contention that the use of the present tense in the definition of "establishment" that was in effect at the time of the transfer of the property is controlling. In Gwaltney v. Chesapeake Bay Found., Inc.,484 U.S. 49, 56 (1987), the Supreme Court addressed this issue in considering the language of Section 505(a) of the federal Clean Water Act, 33 U.S.C. § 1365. "One of the most striking indicia of the prospective orientation of the citizen suit is the pervasive use of the present tense." Gwaltney at 59. The use of the present tense in this portion of the 1985 Transfer Act, however, is something short of pervasive.
In Travelers Indemnity Co. v. Maleci, 215 Conn. 399, 404,576 A.2d 485 (1990), the Connecticut Supreme Court found the use of the present tense in General Statutes § 38-175c(a)(2), which mandates certain uninsured motorist coverage unless the insuredrequests in writing a lesser amount, to be plain and unambiguous in expressing the legislature's intent. The court reasoned that:
 . . . the verb speaks in the present tense. The statute does not say "requested" nor does it say "may have requested in the past." We are entitled to presume that if the legislature intended that past acts could constitute CT Page 8824 compliance with the mandate of requests for a lesser amount pursuant to the statute, language to that effect would appear in the statute.
Here, however, the present tense is used not in describing the action that an individual needs to undertake in order to trigger the application of the legislation, but rather in defining a term, i.e. what an "establishment" is.
There is, to be sure, a presumption that amendments to a statute effect a change in the existing law. Waterbury PetroleumProds. v. Canaan Oil Fuel, 193 Conn. 208, 232, 477 A.2d 988
(1984). Here, the 1987 amendment to the Transfer Act clearly directed would be transferors to look back to 1967 (as well as to consider a number of specific kinds of entities as establishments, whether or not they met the 100 kg. threshold). Schwartz argues that if one accepts the argument that the 1987 amendments merely clarified the 1985 Act, the entities identified in 1987 would also have been subject to the 1985 Act. However, the specific addition of certain types of entities, even without a 100 kg. threshold, is clearly a substantive change, and the Hartts quite rightly do not contend that this portion of the amendment should be given retroactive effect. The Hartts claim only that by specifying the May 1, 1967 starting date, the legislature wished to clarify the fact that certain historical operations that produced 100 kg. of hazardous waste in a month were within the Transfer Act's purview.
Indeed, it has been suggested that rather than expanding the ambit of the Transfer Act to past operations as Schwartz contends, the 1987 amendment actually served to make clear that the reach of the Transfer Act was limited to operations occurringon or after May 1, 1967. P.A. 87-475 § 1. See, Colonnade Oneat Old Greenwich Limited Partnership v. Electrolux Corp.,767 F. Sup. 1215, 1220, n. 3 (D.Conn. 1991): ("The arguably draconian results of the 1985 version of the Transfer Act were effectively recognized and corrected by the Connecticut legislature when, in 1987, it amended the Act to exclude all `establishments' which ceased operation prior to May 1, 1967.") This view is given further support by the most recent amendment to the Transfer Act, Public Act 95-183, which set 1980 as the new starting date for application of the act to most establishments.
It is also true that "[d]ue process demands that a statute be sufficiently clear and precise to `afford a person of ordinary CT Page 8825 intelligence a reasonable opportunity to know what is permitted or prohibited.'" Gunther v. Dubno, 195 Conn. 284, 297,487 A.2d 1080 (1985). While Schwartz' argument certainly suggests that the 1985 definition of "establishment" as one that generates
hazardous waste might make one wonder if he or she might be able to avoid the requirements of the Act if the operation had already ceased, such a person, if aware of the remedial purposes of the statute, would certainly be aware that historical operations might well be within the Transfer Act's purview. "Environmental statutes, considered remedial in nature, are to be construed liberally to reach the desired result." (Citations omitted.)Kenney v. Old Saybrook, 237 Conn. 135, 157, 676 A.2d 795 (1996).
"The General Assembly finds that the growing population and expanding economy of the state have had a profound impact on the life-sustaining natural environment. The air, water, land and other natural resources, taken for granted since the settlement of the state, are now recognized as finite and precious. It is now understood that human activity must be guided by and in harmony with the system of relationships among the elements of nature. Therefore the General Assembly hereby declares that the policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state. It shall further be the policy of the state to improve and coordinate the environmental plans, functions, powers and programs of the state, in cooperation with the federal government, regions, local governments, other public and private organizations and concerned individuals, and to manage the basic resources of air, land and water to the end that the state may fulfill its responsibility as trustee of the environment for the present and future generations." General Statutes § 22a-1.
"It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15.
From these statements of policy and the language of the Transfer Act, it may be inferred that the remedial purpose of the CT Page 8826 Transfer Act is to identify sites of hazardous waste generation, disposal or storage; report them to the Commissioner of the Department of Environmental Protection and putative buyers/transferees; and, if necessary, identify a legally responsible party to mitigate or remove any contamination. The legislature has given us no reason to believe that it was not as interested in historical operations generating hazardous wastes as it was present and future operations. "Where public interest is affected, an interpretation is preferred which favors the public. A narrow construction should not be permitted to undermine public policy sought to be served. This is especially so where the narrow construction discourages rather than encourages the specific action the legislature has sought to foster and promulgate." J. Sutherland, Statutory Construction, § 56.01 (4th Ed. Sands).
In Colonnade One at Old Greenwich Limited Partnership v.Electrolux Corp., 767 F. Sup. 1215 (D.Conn. 1991), the plaintiffs alleged operations generating over 100 kg. of hazardous waste a month which ceased after a purchase and sale agreement had been executed on May 14, 1985 in anticipation of a closing in October, 1995, just after the Transfer Act's October 1, 1995 effective date. The court found that "it cannot reasonably be inferred from the Connecticut legislature's use of the present tense in defining an `establishment' that the Transfer Act was intended to cover only those establishments currently in operation as of October 1, 1985 and not those that ceased operation only a few months earlier. It would thwart the obviously remedial purposes of the statute to restrict the Transfer Act's coverage in the way defendants have proposed." Although Schwartz would like this court to limit the holding inColonnade One to establishments which ceased operations only a few months prior to the passage of the Transfer Act, she offers no authority or reason for such a limitation. If the legislature did not intend to include only establishments actually in operation as of the effective date of the Transfer Act, it is of no moment that an establishment ceased generating waste a few years before the Act became effective, rather than a few months. An amendment is either to be given retroactive effect, or it is not.
In Darak v. Darak, 210 Conn. 462, 556 A.2d 145 (1989), the Supreme Court stated:
In principle, a statutory amendment that construes and CT Page 8827 clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. State v. Blasko, 202 Conn. 542, 558 A.2d 753 (1987); Neyland v. Board of Education, 195 Conn. 174, 180, 487 A.2d 181
(1985). "[I]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . ." State v. Blasko, supra, 202 Conn. At 558, 522 A.2d 753, quoting 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1986) § 22.31, p. 276; see also Shelby Mutual Ins. Co. v. Della Ghelfa, 200 Conn. 630, 640, 513 A.2d 52 (1986). To determine whether or act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent. State v. Blasko, supra, 202 Conn. at 558, 522 A.2d 753.
210 Conn. 471.
The "fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted.) Gil v. Courthouse One, 239 Conn. 676, 682,687 A.2d 146 (1997).
The Department of Environmental Protection appears to have understood that this particular amendment was meant to clarify what might have appeared as a loophole in the Act. Dr. Steven Hitchcock, Director of the DEP Hazardous Waste Unit, testified before the Legislature as to his view of the purpose of amending the definition of "establishment":
 . . . it changes the wording to include those companies . . . not those companies that are now producing waste . . . but those companies that have produced waste in the past. The second would be a new definition to define who the transferer [sic] is . . .[4]
The testimony of a witness may not be the best evidence of legislative intent, and there really is no direct evidence of CT Page 8828 what any legislator had in mind when the 1987 amendments were approved. It is, however, instructive to learn how the agency viewed a proposed amendment to a statute which it is charged with enforcing. Particularly significant is Dr. Hitchcock's use of the phrase "changes the wording" to describe the addition of the May 1, 1967 date, which he distinguishes from the "new definition" that added specific kinds of operations. This distinction further supports the conclusion that inclusion of the May 1, 1967 date was designed as a clarification of existing law.
Schwartz contends, however, that the DEP in this case has acknowledged that it as no evidence that this property was an establishment at the time of the 1986 conveyance, based on a memorandum dated October 24, 1991. This memorandum, however, taken in context, tends as much to support the Hartts' argument that the Transfer Act applies to past operations. "Although the construction and interpretation of a statute is a question of law for the courts to decide [citations omitted], it is the well-established practice of this court to accord great deference given a statute by the agency charged with its enforcement."Starr v. Commissioner of Environmental Protection, 226 Conn. 358,372, 627 A.2d 1296 (1993). At the time of this October 24, 1991 memorandum, the DEP was apparently well aware that Mac's was not in operation at the time of the transfer. In a June 12, 1990 letter, the DEP made reference to "[s]oil samples from the property at 1209-1213 Foxon Road where a dry cleaning businessoperated in the 1970's. . . ." (emphasis added). In the October memorandum some sixteen months later, the DEP wrote that the 1985 Transfer Act would apply if evidence of 100 kg. generated in any month at this former operation could be established. Thus, there is evidence that the DEP believed that the 1985 Transfer Act would apply to this transfer, assuming that the 100 kg. threshold was met. In summary, this court concludes that the 1987 amendment should be applied retroactively and that summary judgment should therefore not be granted on the ground that the transfer of the property in question here was not subject to the Transfer Act.
Count I: The 100 Kilogram Threshold
Schwartz next argues that even if the 1985 Transfer Act applies to this site based on past operations there, the Hartts have not produced evidence that the filter powder residue generated by Mac's was "hazardous waste" within the meaning of the Transfer Act. Specifically, she contends that there are no facts in dispute regarding Schwartz' assertion that Mac's never CT Page 8829 generated the requisite 100 kg. of hazardous waste in any month.
Resolution of this issue is highly fact-bound. The documentation produced by both parties with respect to this point was extensive and voluminous[5], and it would serve no useful purpose to recount it in detail here. After careful review of the documentation and the parties' arguments, the court concludes that the question of whether Mac's produced the requisite 100 kg. of hazardous waste remains in dispute, and the defendant is therefore not entitled to summary judgment based on her contention that it is undisputed that this threshold was not reached.
In Fogarty v. Rashaw, the Supreme Court held that:
 The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.
193 Conn. 442, 445, 476 A.2d 582 (1984). Schwartz has not sustained this burden.
Count II: Fraudulent Nondisclosure
Schwartz contends the Hartts have failed to allege or demonstrate that Schwartz had a duty under the Transfer Act which he intentionally breached, and that the plaintiffs can not, as a matter of law, prove fraudulent nondisclosure.[6] Schwartz argues that violation of the Transfer Act does not in and of itself establish fraud,[7] which requires a failure to disclose known facts.
In Duksa v. Middletown, 173 Conn. 124, 127, 376 A.2d 1099
(1977), our Supreme Court held that mere silence does not constitute fraud.
 Regarding the duty to disclose, the general rule is that . . . silence . . . cannot give rise to an action . . . to set aside the transaction as fraudulent. Certainly this is true as to all facts which are CT Page 8830 open to discovery upon reasonable inquiry. Mere nondisclosure . . . does not amount to fraud. To constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak. (internal citations and quotations omitted.)
In concluding that the conveyance of the property was subject to the terms of the Transfer Act, this court has necessarily concluded that Schwartz had a duty to speak. Along with the a factual dispute over whether Mac's in fact generated 100 kg. of hazardous waste in a month, there is also a dispute over the extent of Schwartz' knowledge that such waste had been generated as of the time of the conveyance.
In denying a the defendant's earlier motion to strike the fraudulent nondisclosure count, Judge Zoarski correctly held that an allegation of failing to disclose a "known fact" when the law created an obligation to disclose it, states a claim on which relief may be granted as a matter of law. To do so as a matter of fact, however, there must be evidence upon which the trier of fact could conclude that the fact was known at the time of the duty. As the evidence on this point remains in dispute, Schwartz is not entitled to summary judgment.
Schwartz further contends that this count is barred by the three year statute of limitations, CGS § 52-577 applicable to intentional torts. Summary judgment may be granted where the claim is barred by the statute of limitations. Doty v. Mucci,238 Conn. 800 (1996). Schwartz contends that the statute begins to run on the day the tortious conduct occurred. She claims that in this case, the alleged failure to disclose occurred no later than the date of the conveyance. See, Alturi v. Colasso,168 Conn. 329, 332, 362 A.2d 798 (1975); Fichera v. Mine Hill Corporation,207 Conn. 204, 541 A.2d 472 (1988) (claim barred when plaintiffs fail to allege any continuing duty to disclose their prior deceptive acts); Connell v. Colwell, 214 Conn. at 254-55
(continuing course of conduct cannot be the failure of the alleged tort feasor to notify plaintiff of his wrongdoing). She contends Count Two had to have been filed no later than March, 1989.
The Hartts counter persuasively, however, that the controlling statute of limitations is found in General Statutes CT Page 8831 § 52-577c, which provides, in pertinent part:
 (b) Notwithstanding the provisions of sections 52-577
and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.
"`It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or other statute which might otherwise prove controlling.'" Concerned Citizens of Sterling,Inc. v. Conn. Siting Council, 215 Conn. 474, 576 A.2d 510, 515
(1990) (quoting City of Meriden v. Board of Tax Review,161 Conn. 396, 288 A.2d 435, 438 (1971)).
Schwartz argues that even if this statute of limitations does apply, the evidence shows that the Hartts discovered, or should have discovered, the contamination prior to the June 12, 1990 date which they claim was the date they first learned of the problem. The Hartts dispute this assertion and have offered evidence in support of their position. When a statute of limitations defense involves disputed factual questions, as is the situation in this case, summary judgment is inappropriate.Sharp v. Wyatt, 31 Conn. App. 824, 855 (1993).
There are material factual issues both as to the existence of fraud and the date of discovery for purposes of the limitations period for bringing such a claim. Summary judgment is therefore inappropriate as to this count, and the motion for summary judgment as it relates to the second count is denied.
Count III: Failure to Supervise Tenants
Schwartz seeks summary judgment as to the third count based on her claim that the amendment adding the third count does not relate back to the original complaint and is therefore time-barred. This issue has already been addressed by Judge Licari in granting leave to amend and by Judge Zoarski in denying the motion to Strike, both of whom decided the issue adversely to the defendant. Schwartz has offered no reason why this court should reach a different result. CT Page 8832
Schwartz also asserts a statute of limitations argument similar to that which was discussed with reference to the second count. That argument is equally unavailing as to this count.
Finally, Schwartz contends that there is no basis in the law or in the lease between Schwartz and Mac's establishing a duty on the part of Schwartz to supervise, monitor or control tenant activities. She argues that a cause of action based on negligence requires the allegation not only of negligent performance but of the existence of a duty to perform. Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375, 441 A.2d 620 (1982). Even if Schwartz had such a duty, she asserts, there is no legal basis for this duty to run to the Hartts, a subsequent purchaser.
"It is hornbook law that a transferor of land ceases to be liable for injuries caused by a dangerous condition existing at the time of the transfer once he has surrendered possession and control." The Stop Shop Companies, Inc. v. Amerada Hess Corp.,
13 CLT No. 11 (D.Ct. Conn., 1985) citing Restatement (Second) of Torts §§ 351-52 (1965) and 62 Am.Jur.2d, Premises Liability §§ 20-22 (1972). That rule, however, "does not apply to defects . . . existing at the beginning of the tenancy, if they (a) were not discoverable on reasonable inspection . . ., and (b)were defects with the knowledge of which the landlord was chargeable." Masterson v. Atherton, 149 Conn. 307, 179 A.2d 592,595 (1962). These are issues of fact which are very much in dispute in this case.
For all of these reasons, summary judgment as to the third count is denied.
Fourth Count: Liability Under CGS § 22a-452.
Schwartz contends that liability under General Statutes §22a-452[8] requires evidence that: (1) the Hartts contained, removed or mitigated the contamination; (2) they expended money to remediate the contamination; (3) the costs of remediation were reasonable; and (4) the contamination was caused by Schwartz' culpable conduct.
As to the last of these issues, to be sure, Schwartz did not cause or conceal the contamination. As previously discussed, however, there are unresolved issues of fact regarding negligence, so that summary judgment is not appropriate on that CT Page 8833 basis. Schwartz' principal contention appears to be that since the Hartts have not yet expended funds to remediate the contamination, they cannot maintain a cause of action under this section of the statutes. The suggestion that because the Hartts have not provided evidence of any expenditures on their part to mitigate or remediate the contamination, they are not entitled to a remedy under § 22a-452, is totally without support. They are at least entitled to seek declaration that any expenditures that they do undertake must be reimbursed by Schwartz.
Schwartz also asserts a statute of limitations argument similar to that which was discussed with reference to the second, third and fourth counts. That argument is equally unavailing as to this count.
Summary judgment as to the fourth count is therefore denied.
Fifth Count: Connecticut Environmental Protection Act
Schwartz argues that the Hartts have not established that she is in violation of the Connecticut Environmental Protection Act ("CEPA") based on her claims that (1) the Hartts do not have standing; (2) they have not established that continuing activities directly threaten the waters of the state; (3) they have no remedy under CEPA since there is no activity to enjoin nor relief to obtain which will protect against the alleged conduct which allegedly polluted the groundwater some eighteen years ago.[9] She also makes a statute of limitations argument similar to that discussed in connection with the second, third and fourth counts. Schwartz' argument that the policy of CEPA is to give the public a remedy to "prevent conduct which threatens" the air, water and other natural resources from unreasonable pollution, impairment or destruction, and therefore does not apply to a situation where the contamination has already taken place, overlooks the deterrent value that legislation such as this provides. It may well be that in the majority of cases alleging a CEPA violation, plaintiffs have intervened in administrative proceedings under CGS § 22a-19 to prevent agencies from issuing permits or approvals to conduct proposed activities which allegedly will threaten the environment,[10] and that in most of the remaining cases, plaintiffs have filed an action under General Statutes § 22a-16 to enjoin ongoing operations or activities which allegedly are directly threatening or polluting CT Page 8834 the environment.[11]
The language of § 22a-16, however, certainly appears to contemplate the possibly of a suit by a private citizen against an entity other than the state for the consequences of past pollution. Since the statute expressly precludes only an action against the state for contamination which occurs prior to the acquisition of contaminated property, it necessarily follows that any action against other individuals or entities based on prior spills and discharges is not prohibited. Inclusio unius estexclusio alterius.
Schwartz also asserts a statute of limitations argument similar to that which was discussed with reference to the second, third, and fourth counts. That argument is equally unavailing as to this count.
Summary judgment is therefore inappropriate as to the fifth count.
For all of the above reasons, the Defendant's motion for summary judgment is denied in its entirety.
Jonathan E. Silbert, Judge