STATE MANAGEMENT ASSOCIATION OF CONNECTICUT, INC., ET AL. *v.* WILLIAM A. O'NEILL ET AL.
(12978)

HEALEY, SHEA, CALLAHAN, HURLEY and LEWIS, Js.

Argued May 14—decision released August 11, 1987

*Eugene N. Sosnoff,* for the appellants (plaintiffs).

*Thadd A. Gnocchi,* assistant attorney general, with whom, on the brief, were Joseph I. Lieberman, attorney general, and *Bernard F. McGovern, Jr., Robert E. Walsh* and *Charles A. Overend,* assistant attorneys general, for the appellees (defendants).

CALLAHAN, J. The dispositive issue in this appeal is whether General Statutes § 5-270 (b) and (g) are unconstitutional because they deny to those state employees who are designated as "managerial employees" or "managers" the right to union representation and the right to bargain collectively with the state concerning the terms and conditions of their employment. The plaintiffs, state management association of Connecticut (SMAC), and four members of the association who work for the state, appeal from a decision of the trial court denying their request for a declaratory judgment that § 5-270 (b) and (g) are unconstitutional and for related relief. We find no error.

A brief summary of the legislative action leading to the exclusion of these employees from the protections of General Statutes § 5-270 et seq. is necessary to our discussion of the plaintiffs' claims. In 1975, the Gen-

eral Assembly adopted the State Employees' Relations Act (SERA), which, for the first time, granted state employees the right to bargain collectively. Public Acts 1975, No. 75-566 (now codified in General Statutes § 5-270 et seq.). Thereafter, in 1979, SMAC petitioned the Connecticut state board of labor relations (SLRB) for a certification permitting it to represent a unit of state managerial employees. The state objected to this petition on the ground that SERA did not extend to managerial employees, but the board overruled the state's objection, ordered an election and, in 1981, certified SMAC as the representative for managerial employees. In that same year, however, the General Assembly passed Public Acts 1981, No. 81-457, § 12 (b) and (g) (now codified in General Statutes § 5-270 [b] and [g]), which explicitly excluded managerial employees from SERA's coverage. The plaintiffs then filed a declaratory judgment action seeking to have the managerial exclusion declared unconstitutional. The trial court rendered judgment for the defendants and the plaintiffs filed this appeal claiming that the trial court erred in finding General Statutes § 5-270 (b) and (g) constitutional. Specifically, they argue that these provisions (1) deprive them of equal protection under the law as guaranteed by the fourteenth amendment to the United States constitution and article first, §§ 1 and 20, of the state constitution, and (2) are unconstitutionally vague and ambiguous in violation of the due process clause of the fourteenth amendment.[1] We disagree with these contentions.

---

[1] The plaintiffs also claim that the denial of the right to participate in collective bargaining under the State Employees' Relations Act constitutes a violation of 42 U.S.C. § 1983. This claim was not included in the plaintiffs' preliminary statement of issues; Practice Book § 4013; and it is only mentioned in passing in their brief. See *State* v. *Ramsundar,* 204 Conn. 4, 16, 526 A.2d 1311 (1987). Therefore, we are not bound to consider this issue. In any event, our disposition of the plaintiffs' first two claims makes it unnecessary to address this last claim.

I

The plaintiffs first claim that General Statutes § 5-270 (b) and (g)[2] deny them equal protection under the law because these provisions deny "managers" or "managerial employees" the right to bargain collectively with the state while § 5-270 (b) and (f)[3] grant such

[2] General Statutes (Rev. to 1981) § 5-270, as amended by Public Acts 1981, No. 81-457, § 12, provides:

"(b) 'Employee' means any employee of an employer, whether or not in the classified service of the employer, except elected or appointed officials, board and commission members, managerial employees, part-time employees who work less than twenty hours per week and confidential employees. . . .

"(g) 'Managerial employee' means (1) any individual in a position in which the principal functions are characterized by not fewer than two of the following: (A) Responsibility for direction of a sub-unit or facility of a major division of an agency or assignment to an agency head's staff; (B) development, implementation and evaluation of goals and objectives consistent with agency mission and policy; (C) participation in the formulation of agency policy; (D) a major role in the administration of collective bargaining agreements or major personnel decisions, or both, including staffing, hiring, firing, evaluation, promotion and training of employees; or (2) department of corrections employees at the level of lieutenant or above. The number of managerial employees in the state executive and judicial branches shall not exceed four per cent of the total number of permanent full-time employees in each branch; the number of managerial employees in each constituent unit of the system of higher education shall not exceed seven per cent of the total number of permanent full-time employees in each such unit."

[3] General Statutes (Rev. to 1981) § 5-270, as amended by Public Acts 1981, No. 81-457, § 12, provides:

"(b) 'Employee' means any employee of an employer, whether or not in the classified service of the employer, except elected or appointed officials, board and commission members, managerial employees, part-time employees who work less than twenty hours per week and confidential employees. . . .

"(f) 'Supervisory employee' means any individual in a position in which the principal functions are characterized by not fewer than two of the following: (1) Performing such management control duties as scheduling, assigning, overseeing and reviewing the work of subordinate employees; (2) performing such duties as are distinct and dissimilar from those performed by the employees supervised; (3) exercising judgment in adjusting grievances, applying other established personnel policies and procedures and in enforcing the provisions of a collective bargaining agreement; and (4) establishing or participating in the establishment of performance standards for subordinate employees and taking corrective measures to imple-

rights to those employees designated as "supervisors." They also claim that § 5-270 (b) and (g) infringe upon their "fundamental right" to bargain collectively. We are unpersuaded.

It is established that the equal protection provisions of the federal and state constitutions have the same meaning and limitations. *Gunther* v. *Dubno,* 195 Conn. 284, 290 n.6, 487 A.2d 1080 (1985); *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 635, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980); *Miller* v. *Heffernan,* 173 Conn. 506, 509, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978). "When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest. E.g., *Eielson* v. *Parker,* [179 Conn. 552, 563, 427 A.2d 814 (1980)]; *Frazier* v. *Manson,* 176 Conn. 638, 645, 410 A.2d 475 (1979). Otherwise, a statute will stand if the classification bears a reasonable relation to a legitimate state interest. E.g., *G. D. Searle & Co.* v. *Cohn,* 455 U.S. 404, 408, 102 S. Ct. 1137, 71 L. Ed. 2d 250 (1982); *United Illuminating Co.* v. *New Haven,* [supra, 636]; *Eielson* v. *Parker,* supra, 563; *Frazier* v. *Manson,* supra, 645." *Keogh* v. *Bridgeport,* supra, 66–67.

In this case, the plaintiffs do not claim that the classification of "managerial employees" is a suspect classification; rather they contend that the right to bargain collectively is a fundamental constitutional right. They argue, therefore, that the disparity of treatment

ment those standards, provided in connection with any of the foregoing the exercise of such authority is not merely of a routine or clerical nature, but requires the use of independent judgment, and such individuals shall be employees within the meaning of subsection (b) of this section. The above criteria for supervisory positions shall not necessarily apply to police or fire departments."

between managers and supervisors under § 5-270 (g) and (f) should be subject to the "strict scrutiny" test and not the "rational basis" test, the latter of which the trial court applied in assessing the constitutionality of the statute. This argument is without merit.

"The key to discovering whether a right is fundamental is in assessing whether the right is explicitly or implicitly guaranteed by the Constitution. *San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 34, 93 S. Ct. 1278, 1297, 36 L. Ed. 2d 16 (1973)." *Cardo* v. *Lakeland Central School District,* 592 F. Sup. 765, 770 (S.D.N.Y. 1984). Such rights include "first amendment rights, which are explicitly provided for by the Constitution, see e.g., *Mt. Healthy City Board of Education* v. *Doyle,* 429 U.S. 274, 284–85, 97 S. Ct. 568, 574–575, 50 L. Ed. 2d 471 (1972); *Perry* v. *Sindermann,* 408 U.S. 593, 598, 92 S. Ct. 2694, 2698, 33 L. Ed. 2d 570 (1983); the right to travel interstate, which has been found to be implicit in the Constitution, see, e.g., *Martinez* v. *Bynum,* 461 U.S. 321, 103 S. Ct. 1838, 1842–43, 75 L. Ed. 2d 879 (1983); *Shapiro* [v. *Thompson,* 394 U.S. 618, 629–31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969)]; and the right to vote, which is the guardian of all other rights. *Harper* v. *Virginia Board of Elections,* 383 U.S. 663, 667, 86 S. Ct. 1079, 1081, 16 L. Ed. 2d 169 (1966)." *Cardo* v. *Lakeland Central School District,* supra.

The plaintiffs do not claim, nor could they, that the right to bargain collectively is explicitly guaranteed by the constitution. Rather, they argue that the United States Supreme Court in *NLRB* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 57 S. Ct. 615, 81 L. Ed. 893 (1937), specifically held that the right of employees to form a union and engage in collective bargaining is a fundamental constitutional right. As the trial court indicated, however, the plaintiffs misinterpret the Supreme Court's reference in its opinion to a fundamental right. In *NLRB* v. *Jones & Laughlin Steel*

*Corporation,* the United States Supreme Court upheld the validity of the National Labor Relations Act of 1935 (NLRA).[4] The plaintiffs rely on that portion of the opinion where the court was discussing § 8 (1) and (3) of the NLRA.[5] Id., 32. Section 8 (1) refers to § 7 of the same act, which provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." The court, in discussing this subdivision, stated: "Thus, in its present application, the statute goes no further than to safeguard the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer.

"That is a fundamental right. Employees have as clear a right to organize and select their representatives for lawful purpose as the respondent has to organize its business and select its own officers and agents.

---

[4] The National Labor Relations Board had found that Jones & Laughlin Steel Corporation had violated the National Labor Relations Act by engaging in unfair labor practices affecting commerce. The unfair labor practices charged were that the corporation had discriminated against members of the labor organization with regard to hiring and tenure of employment, and that it had been coercing and intimidating its employees in order to interfere with their self-organization. The labor organization had alleged that the discriminating and coercive action was the company's discharge of certain employees. *NLRB* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 22, 57 S. Ct. 615, 81 L. Ed. 2d 893 (1937). The board sustained the charges; the corporation failed to comply, and the board petitioned the Court of Appeals to enforce the order. Id. The court denied the petition, holding that the order lay beyond the range of federal power. The United States Supreme Court then granted certiorari. Id.

[5] Section 8 of the National Labor Relations Act of 1935, 29 U.S.C. § 158, provides in pertinent part: "It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7. . . .

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

Discrimination and coercion to prevent the free exercise of the right of employees to self-organization and representation is a proper subject for condemnation by competent legislative authority." Id., 33. It is clear from this portion of the court's opinion that the court's reference to a fundamental right is related to the NLRA's specific statutory grant of protection of the right to self-organization and to select one's own representative, not to a fundamental right in a constitutional sense. "At best, the right to collectively bargain and the right to receive the benefits of a collective bargaining agreement are statutorily created property rights." *Cardo* v. *Lakeland Central School District,* supra, 770; see *Hanover Township Federation of Teachers Local 1954* v. *Hanover Community School Corporation,* 457 F.2d 456, 461 n.13 (7th Cir. 1972); *Atkins* v. *Charlotte,* 296 F. Sup. 1068, 1077 (W.D.N.C. 1969); see also *NLRB* v. *Budd Mfg. Co.,* 169 F.2d 571, 577 (6th Cir. 1948), cert. denied, 335 U.S. 908, 69 S. Ct. 411, 93 L. Ed. 441 (1949)[6]; *Shelofsky* v. *Helsby,* 32 N.Y.2d 54, 295 N.E.2d 774, 343 N.Y.S.2d 98, appeal dismissed, 414 U.S. 804, 94 S. Ct. 60, 38 L. Ed. 2d 41 (1973). We conclude, therefore, that the trial court did not err in finding that the right to bargain collectively is not a fundamental constitutional right.

Therefore, since the legislation involved in this case does not create a suspect classification or impinge on

---

[6] In *NLRB* v. *Budd Mfg. Co.,* 169 F.2d 571, 577 (6th Cir. 1948), cert. denied, 335 U.S. 908, 69 S. Ct. 411, 93 L. Ed. 441 (1949), the Sixth Circuit Court of Appeals specifically rejected the notion that the protection afforded by the National Labor Relations Act is a constitutional right. The court stated that "[t]he right of employees to form labor organizations and to bargain collectively through representatives of their own choosing with employers has long been recognized. *NLRB* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 33, 34, 57 S. Ct. 615, 81 L. Ed. 893, 108 A.L.R. 1352 [1937]. This right is protected by the Constitution against *governmental* infringement, as are the fundamental rights of other individuals. But prior to the National Labor Relations Act no federal law prevented *employers* from discharging employees from exercising these rights or from refusing

a fundamental constitutional right, the plaintiffs must establish that the statutory classification is without a rational basis in order successfully to challenge it on equal protection grounds. *United Illuminating Co.* v. *New Haven,* supra, 636; see *Cardo* v. *Lakeland Central School District,* supra, 771; *Gunther* v. *Dubno,* supra, 292–94. "A classification is allowable if it bears a reasonable relationship to a legitimate purpose of governmental action. *Bassett* v. *Rose,* 141 Conn. 129, 134, 104 A.2d 212 (1954)." *United Illuminating Co.* v. *New Haven,* supra, 640. "The one attacking the legislation has the burden to negative every conceivable [rational] basis which might support it." Id., 642.

We turn now to whether there is any rational basis which might support the exclusion of managers or managerial employees from labor unions and collective bargaining units. As the trial court indicated in its memorandum of decision, the exclusion of "supervisory type" personnel from collective bargaining rights enjoyed by other personnel has its roots in the Taft-Hartley Act, which amended the NLRA, in part, to exclude "supervisors" from the NLRA's collective bargaining protections. This act withstood a constitutional challenge in *NLRB* v. *Budd Mfg. Co.,* supra, 578, where the Sixth Circuit Court of Appeals held that treating supervisors as part of management by denying their collective bargaining rights did not infringe upon their first amendment rights of freedom of assembly and was not an arbitrary classification violative of due process. The objective of the Taft-Hartley Act "was to assure the employer of a loyal and efficient cadre of supervisors and managers independent from the rank and file." *Shelofsky* v. *Helsby,* supra, 60–62. It is widely believed that this objective is equally applicable to and more important in the public sector. Id., 61; see generally

to recognize or bargain with labor organizations. The National Labor Relations Act created rights *against employers* which did not exist before." (Emphasis in original.) *NLRB* v. *Budd Mfg. Co.,* supra.

H. Rains, "Collective Bargaining in the Public Sector and The Need for Exclusion of Supervisory Personnel," 23 Lab. L.J. 275 (1972); comment, "Collective Bargaining for Connecticut State Employees," 9 Conn. L. Rev. 654, 661–62 (1977).

A review of the legislative history of No. 81-457 of the 1981 Public Acts, the origin of General Statutes § 5-270 (g) which excludes managerial employees, reveals that, in enacting the statute, the legislators were also concerned with efficiency in state government: "The purpose of [§ 5-270 (g)] is to ensure that there are people available to act as managers for the state system to provide effective management of state government." 24 H.R. Proc., Pt. 24, 1981 Sess., p. 7874, remarks of Representative Gardner Wright. "It is important that we allow the state to deal with some system for being able to pick the people who will be classified as managers so that everyone knows what the responsibility is, what the assignments are and who has to take responsibility for action whether something is done correctly and can take credit or whether something is done badly and have to take the blame." 24 S. Proc., Pt. 17, 1981 Sess., p. 5624, remarks of Senator Marcella Fahey. Related to this legislative purpose was the concern for the security and safety of those people under the care of various state agencies in strike situations. Senator Fahey indicated: "What we are dealing with here today is if we have problems in the State of Connecticut and we have a strike, who is going to be there to take care of our patients in our hospitals? Who is going to be there to take care of our prisoners? We are not saying we want to leave enough people so that they can break the strike, but there has to be at least two or three people who are designated as managers, who can make sure that the place doesn't catch on fire or can make plans for a disaster to move patients in and out of places, who can make sure they ring a fire alarm or push the right button or at least

call if there is a problem. If we do not exclude anyone and call anyone a manager, how do we operate? We all look to someone who is a manager for the administrative functions. . . . If we pull things together so that everybody is equalized in a situation that no one can take the initiative and answer a question, are we helping the public or are we hurting the public?'' 24 S. Proc., Pt. 17, 1981 Sess., pp. 5623–24.

While the plaintiffs acknowledge that these may be rational bases for distinguishing managers from rank and file employees, they argue that no rational basis exists for distinguishing managerial employees, as defined in § 5-270 (g), from supervisory employees, as defined in § 5-270 (f). In support of this argument, the plaintiffs point to the expert testimony of Julius Getman, a labor law professor at Yale University Law School, who testified that the Connecticut statute, SERA, was unique in its treatment of managers and supervisors. They also cite other labor relations statutes in Connecticut which do not differentiate between managers and supervisors. See General Statutes § 31-101 et seq., § 7-467 et seq., and § 10-153b, all of which permit persons holding management positions to join collective bargaining associations. These factors, however, neither substantiate, nor are they relevant to the plaintiffs' equal protection claim. The plaintiffs' burden is to establish that the statutory classification is without any rational basis; *Warner* v. *Leslie-Elliot Constructors, Inc.,* 194 Conn. 129, 135, 479 A.2d 231 (1984); *State* v. *Davis,* 190 Conn. 327, 342, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983); not to show that the statute is ''unique'' in its classifications. The plaintiffs have not sustained their burden.

The trial court concluded that § 5-270 (f) and (g) clearly differentiate between the principal functions of the two types of employees, and that the same rationale that had justified separating supervisors from rank

and file employees under the NLRA has even greater weight in separating managers from supervisors; that is, to ensure that the state has the undivided loyalty of its top level personnel acting on its behalf. We agree with the trial court's finding that the classification of managerial employees under § 5-270 (g) and the denial to them of collective bargaining rights under SERA bears a rational relationship to a legitimate state end.

## II

Finally, the plaintiffs argued before the trial court, and now on appeal,[7] that § 5-270 (f) and (g) violate the due process clause of the fourteenth amendment because they are so vague and ambiguous as to render them unenforceable and susceptible to subjective and inconsistent applications. Specifically, the plaintiffs claim that it is impossible to distinguish between the definitions of managerial employees in § 5-270 (g) and supervisory employees in § 5-270 (f). We disagree.

"Courts have derived the void for vagueness doctrine from the constitutional guarantee of due process. See, e.g., *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402–403, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966); *Lanzetta* v. *New Jersey,* 306 U.S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (1939). See generally note, 'The Void-for-Vagueness Doctrine in the Supreme Court,' 109 U. Pa. L. Rev. 67 (1960)." *Seals* v. *Hickey,* 186 Conn. 337, 342, 441 A.2d 604 (1982). "Civil statutes must be definite in their meaning and application, but may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes. See, e.g., *A. B. Small Co.* v. *American Sugar Refining Co.,* 267 U.S. 233, 239, 45 S. Ct. 295, 69 L. Ed. 589 (1925); *Seals* v. *Hickey,* [supra, 343]; *State*

---

[7] We note that the plaintiffs' brief is unclear whether this claim is part of their equal protection claim or whether it is a distinct issue. At oral argument, however, the plaintiffs argued it as a due process claim. Therefore, we will treat it as such.

v. *Anonymous,* 179 Conn. 155, 163, 425 A.2d 939 (1979); *McKinney* v. *Coventry,* [176 Conn. 613, 619, 410 A.2d 453 (1979)]." *Keogh* v. *Bridgeport,* supra, 60. Due process of law requires that statutes must be sufficiently definite and precise to enable a person to know what conduct is permitted and what is prohibited. *State* v. *White,* 204 Conn. 410, 415, 528 A.2d 811 (1987); *State* v. *Proto,* 203 Conn. 682, 689–90, 526 A.2d 1297 (1987); *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980). An imprecise statute, however, may be sufficiently definite if it provides reasonably distinct boundaries for its fair administration. *Keogh* v. *Bridgeport,* supra; *State* v. *Anonymous,* supra, 164.

It is also clear that "parties challenging the constitutionality of a statutory enactment have the burden of showing its invalidity beyond a reasonable doubt." *State* v. *Hernandez,* 204 Conn. 377, 385, 528 A.2d 794 (1987); *State* v. *Wright,* 198 Conn. 273, 282, 502 A.2d 911 (1986); *Keogh* v. *Bridgeport,* supra; *McKinney* v. *Coventry,* supra, 621. "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity." *Keogh* v. *Bridgeport,* supra. Applying this analysis to the facts of this case; *State* v. *White,* supra, 417; *State* v. *Proto,* supra, 697; *State* v. *Pickering,* supra, 57; we are not persuaded that the plaintiffs have met their burden of proving that the statute is unconstitutionally vague.

The plaintiffs' expert witness, Professor Getman, testified that it was difficult to distinguish between the definitions of supervisory and managerial employees, and that any employee who fit under one definition would necessarily fit under the other. He further testified that such vague language would result in the SLRB making up its own standards for classifying employees, and in arbitrary decision-making in assigning employees to one category or another. In addition,

testimony was presented to the trial court that a number of employees felt they filled both supervisory and managerial roles. The plaintiffs argue that this testimony supports their contention that § 5-270 (f) and (g) are unconstitutionally vague.

"A statute is not void for vagueness, however, simply because it may be open to two possible constructions . . . or 'merely because the imagination can conjure up hypothetical situations in which the meaning of some terms may be in question. *American Communications Association* v. *Douds,* 339 U.S. 382, 70 S. Ct. 674, 94 L. Ed. 925 [1950].' " (Citations omitted.) *McKinney* v. *Coventry,* supra, 619.

In comparing managers and supervisors, the trial court reasoned that "[s]upervisors supervise the work of subordinates; managers head an agency subunit or facility. Supervisors apply agency policies; managers formulate those policies. Supervisors enforce collective bargaining agreements; managers play a major role in administering them. Supervisors establish and implement employee performance standards; managers decide major personnel decisions. In short, supervisors are equivalent to foremen and lower management; managers to middle and upper management." It concluded, therefore, that the definitions clearly differentiate between the "principal functions" of the two types of employees. On the basis of our review of General Statutes § 5-270 (f) and (g), we agree with the trial court's conclusion and find that the classification system in these two provisions, which is based upon characterizing the "principal functions" of employees, is sufficiently clear and explicit.

We conclude therefore that General Statutes § 5-270 (f) and (g) are not unconstitutionally vague.

There is no error.

In this opinion the other justices concurred.