DEPARTMENT OF ADMINISTRATIVE SERVICES ET AL. *v.*
EMPLOYEES' REVIEW BOARD ET AL.
(14615)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

---

Argued May 6—decision released July 27, 1993

*Robert J. Krzys,* for the appellants (defendant Marietta G. Sonido et al.).

*Laurie Adler,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellees (plaintiffs).

BERDON, J. The defendants, state managerial employees, appeal from the judgment of the trial court that the employees' review board (review board)[1] lacked jurisdiction to hear their grievances arising out of an employment benefit that allegedly discriminated against managerial employees.[2] The employment benefit took the form of subsidized rent for state owned rental housing occupied by state employees. The state attempted to increase the rent on all of its housing, and thereby reduce the cost of this benefit. The increased rent was applied unilaterally to the defendants, who as managerial employees have no collective bargaining rights. The state was required, however, to negotiate the increase with collective bargaining unit employees, and at least one bargaining unit took the matter to arbitration and won a lower rent increase. The issue to be resolved is whether this difference in outcomes, resulting from collective bargaining law, constitutes a form of discrimination within the jurisdiction and remedial authority of the review board.

The facts, as found by the review board, are as follows. The defendant Marietta G. Sonido is a state employed psychiatrist and medical director at Fairfield Hills Hospital (hospital), a state hospital for the mentally ill. The defendant Okhikadu Devarajan is also employed by the state as chief of psychiatry at the hospital. The defendants lived for a number of years in state owned rental housing on the hospital grounds. Their rents were heavily subsidized by the state as a recruitment and retention incentive, so that the defendants were able to pay rents that were considerably below the contemporary rental market value of the

---

[1] Although the employees' review board is the named defendant in this appeal, it has not submitted a brief or otherwise actively participated.

[2] The plaintiffs are the state department of administrative services, the state of Connecticut, and the state of Connecticut department of mental health.

housing. The defendants are managerial employees, and thus, unlike many of their physician and psychiatrist colleagues at the hospital, the defendants have no state employee collective bargaining rights. General Statutes § 5-270 (b).

In 1987, the state reappraised its state employee housing rental rates to reflect the prevailing market rate. The commissioner of administrative services ordered that all state employees occupying state housing, including managerial and collective bargaining employees, pay rent at 70 percent of the appraised market value, to be phased in over a three year period. The commissioner unilaterally applied the new rent levels to the defendants, resulting in a 797 percent increase in Devarajan's biweekly rent from $51 in 1987 to a completely phased in rent of $402 in 1990, including utilities. Sonido received a 669 percent increase, from $77 paid biweekly in 1987 to a completely phased in rent of $515 in 1990, including utilities.[3] The review board found that these increases, in essence, constituted a pay cut for the defendants.

The commissioner was not able to apply higher rents unilaterally to bargaining unit employees, due to collective bargaining law which places a duty upon employers to bargain in good faith with the representatives of the employees prior to instituting modifications in terms and conditions of employment.[4] Although some

[3] The rent increases for Devarajan were phased in as follows. In 1987 the rent was $51 every two weeks; the rent was subsequently increased to $173 in 1988, to $288 in 1989, and then to $402 in 1990 respectively. The rent for Sonido's housing in 1987 was $77; rent was subsequently increased to $216 in 1988, to $366 in 1989, and then to $515 in 1990 respectively.

[4] The commissioner of administrative services has the authority to modify unilaterally the benefits and compensation of state employees. General Statutes (Rev. to 1989) § 5-200 (l), (q) and (r), recodified as § 5-200 (k), (o) and (p) respectively. This authority is limited, however, by the state employee collective bargaining law. General Statutes §§ 5-270 through 5-280. Under

bargaining units acquiesced in the increases, the Health Care (P-1) collective bargaining unit took the matter to arbitration and won much smaller rent increases, amounting to a total increase of 52 percent over a three year period.[5]

Citing the disparity between rental increases for managerial employees and collective bargaining employees, the defendants filed grievances in November, 1988. General Statutes (Rev. to 1989) § 5-202.[6] The

---

this law, the state has the duty to bargain with state employees who are represented by an employee organization over questions of "wages, hours and other conditions of employment." General Statutes § 5-272 (c). The result of the duty to bargain in this context is that the state may not unilaterally alter the compensation or employment benefits of union represented employees without first bargaining to impasse. General Statutes §§ 5-272 (a) (4) and (c), 5-276a (c); *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 120–21, 584 A.2d 1172 (1991). Managerial employees, however, have no collective bargaining rights; General Statutes § 5-270 (b); and their compensation may be modified unilaterally without prior bargaining.

[5] As an example, the review board noted that one grade 4 psychiatrist lived in an identical residence, in the same duplex, as Devarajan but because he was a supervisor, rather than a manager like Devarajan, he enjoyed union representation and received the smaller rent increase.

[6] The relevant subsections of General Statutes (Rev. to 1989) § 5-202 read as follows: "(a) Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subsection (r) of section 5-196 may appeal to the employees' review board if he or she receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed, or is aggrieved as a result of alleged discrimination, or unsafe or unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute or regulation. Such employee must have complied with preliminary review procedures, except as otherwise provided in subsection (k) of this section. Such an appeal shall be submitted to the board within ten days of the completion of the final level of the preliminary review procedure, provided the first level of the procedure shall have been initiated no later than thirty calendar days from the date of the alleged violation, except that in cases of dismissal, demotion or suspension the grievance must be submitted directly to the third level of the procedure within twenty-one calendar days of the effective date of such action.

"(b) Upon receiving an appeal, the board shall assign a time and place for a hearing and shall give notice thereof to the parties concerned. The hearing panel shall not be bound by technical rules of evidence prevailing

defendants' supervisor and appointing authority waived the first two steps of the preliminary review procedure; General Statutes (Rev. to 1989) § 5-202 (g) and (h); and the office of labor relations of the department of administrative services denied the grievances at the third and final stage of the preliminary review procedure. Gen-

in the courts. If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied. The hearing panel shall have the power to direct appropriate remedial action and shall do so after taking into consideration just and equitable relief to the employee and the best interests and effectiveness of the state service. The hearing panel shall render a decision within sixty calendar days from the date of the conclusion of the hearing. . . .

"(f) All matters involving examination, including application rejection, type of examination or results, compensation for class or classes or duties, establishment of a new class or classes, compliance with health and safety standards and the Connecticut Occupational Safety and Health Act or alleged discrimination in cases where an appeal has been filed with the human rights commission, shall not be appealable under this section.

"(g) The first level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action other than dismissal, demotion or suspension shall be the aggrieved employee's supervisor or department chief or other employee as designated by the employee's appointing authority. Such aggrieved employee shall present his grievance in writing on a form developed by the commissioner of administrative services and the employee review board which form shall contain a statement of the date the alleged violation occurred and the relief sought in answer to the grievance. The first level designee shall give his answer to such employee within seven calendar days from the date the grievance is submitted to him or within seven days from the date of a meeting convened for the purpose of reviewing the grievance, in which case such meeting shall be convened within seven calendar days from the date the grievance is submitted.

"(h) The second level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action other than dismissal, demotion or suspension shall be the aggrieved employee's appointing authority or designated representative. Such employee, upon receiving a response at the first level which he deems to be unsatisfactory, may proceed to this level by presenting the same form containing the first level answers within seven calendar days from the date the answer was given at the first level. The appointing authority or designated representative shall answer such employee within seven calendar days from the date the grievance is received or within seven calendar days from the date of a meet-

eral Statutes (Rev. to 1989) § 5-202 (i).[7] The defend-
ants appealed to the review board claiming that the dis-
parity in rental increases constituted a form of
discrimination within the review board's remedial
authority under § 5-202 (a).

Before the review board, the state argued that the
rental increases did not constitute discrimination within
the review board's jurisdiction. The review board held
in favor of the defendants, finding discrimination within
the meaning of § 5-202 (a) on the basis of the different
treatment between managerial employees and collec-
tive bargaining employees. The review board defined
"discrimination" as "treating similarly-situated persons
differently on a matter of importance." The review
board concluded that the defendants and the health care

---

ing convened for the purpose of reviewing such grievance, in which case
such meeting shall be convened within seven calendar days from the date
such grievance is received.

"(i) The third level of the preliminary review procedure preparatory to
the filing of an appeal from an alleged grievable action including dismissal,
demotion or suspension shall be the commissioner of administrative ser-
vices or his designated representative. The employee, upon receiving a
response at the second level which he deems to be unsatisfactory, may pro-
ceed to this level by presenting the same form containing the first and sec-
ond level answers within seven calendar days from the date the answer
was given at the second level, except in the case of a dismissal, demotion
or suspension in which case such employee must present the form, com-
pleted but without answers at lower levels within twenty-one calendar days
of the effective date of such action. The commissioner of administrative
services or his designated representative shall reply to such employee within
thirty calendar days from the date such grievance is received or within fif-
teen calendar days from the date of a meeting convened for the purpose
of reviewing such grievance, in which case such meeting shall be convened
within thirty calendar days from the date such grievance is received. . . .

"(l) Either the state or any employee aggrieved by a decision of the
employees' review board may appeal therefrom in accordance with section
4-183. Any employee who prevails in a decision of the employees' review
board shall be entitled to recover court costs and reasonable attorney's fees
if such decision is appealed by the state and affirmed by the court in such
appeal."

[7] See footnote 6 for the text of General Statutes (Rev. to 1989) § 5-202 (g),
(h), and (i).

collective bargaining employees were similarly situated, and stated that while "[p]erfect equality in compensation" between managers and nonmanagerial employees is not required, a "gross differential" between the two groups is unacceptable. The review board found such a gross differential and ordered restitution of part of the difference between the rents paid by the defendants and the rents paid by the employees in the health care collective bargaining unit.

The plaintiffs appealed to the trial court pursuant to General Statutes §§ 5-202 (*l*) and 4-183 (a).[8] The trial court sustained the appeal, holding that the review board had exceeded its statutory authority because the disparities complained of did not constitute "discrimination." The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now affirm the judgment of the trial court.[9]

Section 5-202 (a) delimits the jurisdiction of the review board. It provides that "[a]ny employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subsection (r) of section 5-196 may appeal to the employees' review board if he or she . . .

---

[8] See footnote 6 for the text of General Statutes (Rev. to 1989) § 5-202 (*l*). General Statutes § 4-183 (a). a section of the Uniform Administrative Procedure Act, states in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section."

[9] The trial court also held that the defendants' claims involved "compensation for duties" and therefore were not within the jurisdiction of the review board. General Statutes (Rev. to 1989) § 5-202 (f); see footnote 6. Section 5-202 (f) specifically excludes grievances involving "compensation for duties" from the jurisdiction of the review board. Because we determine that the term "discrimination" in § 5-202 (a) does not include disparate treatment between managerial employees and collective bargaining employees, we do not reach the issue of application of the phrase "compensation for duties" in § 5-202 (f).

is demoted, suspended or dismissed, *or is aggrieved as a result of alleged discrimination . . . .*" (Emphasis added.)

The defendants rely on the "discrimination" clause of § 5-202 (a) as the basis for the review board's jurisdiction over their appeal. The discrimination that the defendants allege is that managerial employees must pay 70 percent of the market value of employee housing rent, while at least some nonmanagerial employees covered by collective bargaining agreements pay a substantially lower rent. Section 5-202 does not define the term "discrimination," nor does General Statutes § 5-196, the definitional section of the State Personnel Act. We are therefore presented with an issue of statutory construction.

The purpose of statutory construction is to determine the intent of the legislature. *Police Department* v. *State Board of Labor Relations,* 225 Conn. 297, 303 n.7, 622 A.2d 1005 (1993); *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989). Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. *Police Department* v. *State Board of Labor Relations,* supra, 300; *Crocetto* v. *Lynn Development Corporation,* 223 Conn. 376, 381, 612 A.2d 1212 (1992). "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 262, 579 A.2d 505 (1990). This case, however, presents a pure question of law, and therefore "invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." Id., 263; *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 718, 546 A.2d 830 (1988). Fur-

thermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency is not entitled to special deference. *Lieberman* v. *State Board of Labor Relations,* supra; *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 210 Conn. 349, 357, 554 A.2d 1089 (1989).

Section 5-202 is part of the State Personnel Act (personnel act), codified in General Statutes §§ 5-193 through 5-269. "We are obligated . . . to read statutes together when they relate to the same subject matter." *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council,* 215 Conn. 474, 482–83, 576 A.2d 510 (1990). This is because of the presumption that the legislature intended to create a harmonious body of law. *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984). We are therefore directed to General Statutes (Rev. to 1989) § 5-227, also found within the personnel act, which provides in relevant part: "No person in the classified service or seeking admission thereto may be appointed, demoted or dismissed or be in any way favored or *discriminated against because of his political opinions or affiliations or as the result of a discriminatory employment practice as defined in section 46a-51.*"[10] (Emphasis added.) Section 5-227 is not expressly set out as a definition for "discrimination," and the venerable policy expressed in § 5-227 predates the creation of the review

[10] General Statutes (Rev. to 1989) § 5-227 provides: "No person in the classified service or seeking admission thereto may be appointed, demoted or dismissed or be in any way favored or discriminated against because of his political opinions or affiliations or as the result of a discriminatory employment practice as defined in section 46a-51. No question in any examination or contained on any form used in connection with carrying out the provisions of this chapter may relate to political or religious opinions or affiliations of any competitor, prospective competitor or eligible person on any employment or reemployment list established and maintained by the commissioner of administrative services."

board by at least thirty-two years.[11] Nevertheless, this court presumes that a law was enacted in view of existing relevant statutes and that the legislature intended them to be read together so as to constitute one consistent body of law. *Shortt* v. *New Milford Police Department,* 212 Conn. 294, 302, 562 A.2d 7 (1989). This principle is particularly applicable in this case since General Statutes § 5-194 of the personnel act states in relevant part: "This chapter shall be so construed and administered as to provide a *uniform* and equitable system of personnel administration of employees in the state service. . . ." (Emphasis added.)

The language of §§ 5-202 and 5-227, read together, indicate that § 5-202 was intended to establish jurisdiction in the review board for the types of discrimination that had earlier been set out in § 5-227. Under § 5-227, managerial employees may seek relief from the review board for claims of discrimination solely on the bases of political considerations or the forbidden grounds of a "discriminatory employment practice" as defined in General Statutes (Rev. to 1989) § 46a-51. "Discriminatory employment practice" is defined in § 46a-51 (7),[12] and pertains to certain types of employment discrimination. Section 46a-51 (7) does not prohibit discrimination between managerial employees and

[11] See Public Acts 1911, chapter 206, § 7 (act authorized adoption of a civil service system based on merit, and barred use of examination questions which "relate to political or religious opinions or affiliations"). The personnel appeal board was first created as a three member body in 1943. General Statutes (Cum. Sup. 1943) § 417g. It was reconstituted as the employees' review board in 1979, with a modification of its jurisdiction discussed later in this opinion. Public Acts 1979, No. 79-621.

[12] General Statutes (Rev. to 1989) § 46a-51 (7) provides: " 'Discriminatory employment practice' means any discriminatory practice specified in section 46a-60." General Statutes § 46a-60 sets out a number of unlawful employment practices, such as discrimination on the basis of age. Section 46a-51 (7) has been amended so that it now also references discriminatory practices specified in General Statutes § 46a-81c. Section 46a-81c bars discrimination on the basis of sexual orientation.

employees covered by a collective bargaining contract. We conclude, therefore, that the review board's authority to redress discrimination does not extend to a claim based upon differences between compensation of managerial employees and collective bargaining employees that resulted from the arbitral process.

Our conclusion is bolstered by an examination of the purposes underlying the statutory scheme of the personnel act. *Pratt* v. *Old Saybrook,* 225 Conn. 177, 182, 621 A.2d 1322 (1993). The purposes of that act and its statutory predecessors are to establish a system of public employment based on merit principles, eliminate political patronage, personal favoritism and discrimination against disfavored political and religious factions, and thereby prevent governmental corruption. *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 131, 135, 394 A.2d 731 (1978); *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 671, 368 A.2d 20 (1976).

The statutory predecessors to the personnel act attempted to further the same policy of merit based employment, and also sought to combat the same evils of political patronage and religious discrimination. See, e.g., General Statutes (1930 Rev.) § 2047 (a predecessor to § 5-227, barring employment examination questions relating to political and religious opinions and affiliations). This court, in addressing a municipal civil service ordinance, described the background of these statutes as follows: "Soon after the formation of political parties in this country, the maxim '[t]o the victor belong the spoils' became current and its wide application gave birth to the so-called 'spoils system.' This in turn resulted in political scandals which have rocked the nation to its foundation. In an attempt to remedy this condition, various forms of merit systems have been adopted aimed to obtain qualified appointees and to ensure them a tenure of office free from interfer-

ence on political or religious grounds." *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846 (1942). Subsequent cases have made clear that these purposes undergird the personnel act. For example, in *Engle* v. *Personnel Appeal Board,* supra, 135, this court stated that the intent of the personnel act was in part to "eliminate as far as practicable the element of partisanship and personal favoritism in making appointments." (Internal quotation marks omitted.) See also *Wagner* v. *Connecticut Personnel Appeal Board,* supra, 674 (personnel act affords state employees "ample and laudable protection against the evils of preference" [internal quotation marks omitted]). On the basis of this history, it stands to reason that the meaning of the term "discrimination" in the review board jurisdictional statute, § 5-202 (a), is limited by the types of discrimination prohibited in § 5-227.

Finally, a review of the legislative history of the personnel act, and our examination of the relationship between that act and the state employee collective bargaining law; General Statutes §§ 5-270 through 5-280; also leads us to reject the view that the review board has the authority to compare the compensation of managerial employees and collective bargaining employees and remedy a perceived unfair differential. Before 1979, the review board's jurisdiction, as set out by § 5-202 (a), included grievances complaining of "alleged discrimination" *and* "unfair treatment." The provision was amended in 1979 by No. 79-621 of the 1979 Public Acts, however, and while "alleged discrimination" was left in, "unfair treatment" was eliminated as a ground for agency jurisdiction. The 1979 amendment also amended § 5-200 (r) by vesting in the commissioner of administrative services discretionary authority to compensate managerial employees with employment benefits that are equal to those of collec-

tive bargaining employees.[13] These amendments were part of a comprehensive overhaul of the personnel act. It is clear from the legislative history that the 1979 amendments were intended, inter alia, to harmonize the personnel act and the public employee collective bargaining law.[14] The two statutes together create a scheme under which the compensation of collective bargaining employees is to be determined by the bargaining and arbitral process, and jurisdiction over questions of unfair treatment of managerial employees is transferred from the review board to the commissioner of administrative services. It is the commissioner, not the review board, that has the discretionary authority to compare and equalize the compensation of collective bargaining and managerial employees.

Moreover, we have upheld different treatment of managerial and unionized employees with respect to collective bargaining rights. *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 529 A.2d 1276 (1987). In *O'Neill*, we reasoned that managers have the responsibility to decide major personnel decisions and formulate agency policies, and therefore managers are differently situated than nonmanagerial employees and supervisors. These responsibilities give

___

[13] General Statutes (Rev. to 1989) § 5-200 (r), recodified as § 5-200 (p), states in pertinent part: "When such authority is not otherwise conferred by statute, the commissioner may issue orders to provide that (1) executive or judicial branch employees . . . not included in any prevailing bargaining unit contract . . . be granted rights and benefits not less than those granted to employees . . . covered under such contracts . . . ."

[14] See 22 S. Proc., Pt. 16, 1979 Sess., p. 5329, remarks of Senator Richard F. Schneller ("the purpose of the bill is to change certain aspects of the state personnel policy and procedures and to make them consistent with the executive reorganization and with collective bargaining statutes"); 22 H.R. Proc., Pt. 31, 1979 Sess., pp. 10979–80, remarks of Representative Gardner Wright, Jr. ("the bill . . . sets up a lot, makes a number of changes to change the personnel administration to agree with both collective bargaining and the reorganization that occurred two years ago"). We note that the legislative history is silent on the specific issue of why "unfair treatment" was removed from General Statutes § 5-202 (a).

managers prestige, autonomy and managerial author-
ity that is not enjoyed by other employees. On the other
hand, because managers administer collective bargain-
ing agreements; id., 759; they have no bargaining or
organizational rights.

We conclude that disparate treatment of managerial
employees and employees subject to collective bargain-
ing is not a form of discrimination within the review
board's jurisdiction under § 5-202 (a).

The judgment is affirmed.

In this opinion the other justices concurred.