[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Reliance Insurance Co. (Reliance), appeals pursuant to General Statutes §§ 4-183 and 38a-19 from the decision of the department of insurance (department). The department ordered the plaintiff to pay a loss under the warehouse liability coverage of a manufacturer's output insurance policy (MOP) issued to the complainant, Mariano Brothers, Inc. (Mariano), an interstate motor carrier. The department found that the policy in question had not been effectively canceled by Reliance before the date the loss occurred. The department's conclusion was based upon its finding that Reliance failed to timely notify the Interstate Commerce Commission (ICC) of the cancellation of the motor carrier portion of the MOP as required by 49 C.F.R. § 1043.7(d) and General Statutes § 38a-170(d) to effect cancellation. For the reasons set forth below, the appeal is sustained.
This appeal stems from the following relevant facts. On July 27, 1994, Reliance issued three insurance policies to Mariano: an automobile liability policy, a general liability policy, and a manufacturer's output policy (MOP). The MOP, which is the policy at issue here, contains various coverage parts, including motor truck cargo liability, governed by 49 C.F.R. § 1043.1, et seq., and warehouse legal liability, which covers damage to certain properties owned by Reliance. Reliance renewed these three policies on August 22, 1994.
On August 24, 1994, a premium finance agreement was executed CT Page 184 between Mariano and A. I. Credit Corporation (AICCO), a premium finance company, setting the premiums for the three policies. The premium finance agreement states: "The insured appoints AICCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of installments as set forth in this agreement." The agreement also provides:
 Cancellation. I [Mariano] understand that if I do not make a payment when it is due or if I am otherwise in default under this agreement, you will exercise your power of attorney and cancel the policy in accordance with the provisions contained in the Agreement and to act in my place with regard to the Policy. I understand that before you cancel the Policy, you will mail a written Notice of Intent to Cancel to me at my last address as shown on your records, and that you will send a Notice of Cancellation to the Insurance Company and me canceling the Policy if I do not make the payment that is overdue or otherwise cure the default within 10 days.
On or about November 2, 1994, AICCO mailed a notice of intent to cancel Mariano's three insurance policies for failure by Mariano to pay its premiums and the cancellation notice itself was mailed to Mariano and Reliance on November 16, 1994. According to the notice, the cancellation became effective November 17, 1994. Two copies of a pro rata cancellation memo dated December 11, 1994, were sent by Reliance to Mariano's insurance broker indicating that the MOP "is canceled pro rata effective 11/17/94." At AICCO's request of December 15, 1994, Reliance did not process the cancellations of the auto liability and general liability policies. On January 3, 1995, AICCO issued a notice to Reliance requesting reinstatement of the policies because Mariano paid AICCO the amount of arrearage of premiums.
At a meeting held on January 11, 1995, representatives of Reliance and Mariano's broker discussed the status of the MOP. The following day, Reliance wrote the broker a letter commemorating the arrangement made at the meeting:
 "The MOP . . . remains canceled (as of November 17, 1994) for non-payment of premium. We received a request from AICCO to reinstate the policy effective January 3, 1995. WE WILL NOT REINSTATE CT Page 185 COVERAGE UNTIL DEDUCTIBLE REIMBURSEMENTS HAVE BEEN RECEIVED. When I have confirmation that payments have been received, I will issue a thirty-day binder to allow you sufficient time to find another market for this risk. This is an accommodation to you granted by Clyde McKee. I remind you, again, that the insured presently does not have coverage under our policy."
(Emphasis in original.) (ROR, Memorandum of Findings and Recommendation, p. 4.)
A thirty-day binder was issued for the MOP on February 16, 1995, covering the period from January 26 to February 26, 1995. Subsequently, a two week extension was granted to March 12, 1995. Sometime in February 1995, Reliance returned the unearned premiums totaling $35,071 to AICCO as required under subsection (e) of General Statutes § 38a-170.
On March 31, 1995, AICCO issued another notice of cancellation effective April 1, 1995, for all three insurance policies. Mariano's Waterbury Property at 37 Commons Court sustained considerable storm damage on April 4, 1995. Another request for reinstatement was issued by AICCO on April 11, 1995, because AICCO had received the delinquent payments on April 10, 1995. Reliance sent a letter dated May 9, 1995, informing AICCO that the MOP was not reinstated.
On April 11, 1995, one week after the storm damage occurred, Reliance notified the ICC and Connecticut Department of Transportation (DOT) of the cancellation of the MOP. Through a letter dated April 21, 1995, the ICC notified Mariano that its certificate of insurance for cargo coverage, filed with the ICC as required by 49 C.F.R. § 1043.1, et seq., would be canceled on May 13, 1995. (ROR, Ex. 34.) On or about May 17, 1995, Mariano filed a complaint with the consumer affairs division of the department. On November 7, 1996, the department notified Reliance by letter of a cease and desist order against it. (ROR 19.) On December 6, 1996, Reliance requested a hearing under General Statutes § 38a-19.
A hearing took place on to January 22, 1997, when evidence was presented. The decision was rendered on February 20, 1997, faxed on February 21, 1997, and mailed on February 24, 1997. CT Page 186
In the relevant portion of its decision, the department found that AICCO's November 16, 1994 notice failed to effect cancellation because timely notice had not been sent to the ICC as required by 49 C.F.R. § 1043.7(d) until after the loss occurred. Thus, the department determined that the MOP remained in effect on April 4, 1995, the date of the storm. According to the department, Reliance was obligated to cover the loss to the Waterbury property pursuant to its obligation under the warehouse legal liability portion of the MOP. Reliance disputes this portion of the department's decision.
The department ordered Reliance to "Honor all of its contractual obligations under policy number MOP 77213568 up to and including May 13, 1995 due to Reliance's failure to strictly comply with section 38a-170(d) . . . ." This appeal was timely filed on March 21, 1997, and argument was heard on October 30, 1997.[1]
In his analysis, the hearing officer for the department found that General Statutes § 38a-170 (a):
 provides that the "contract or contracts" shall not be canceled unless the statutory requirements have been complied with and that the insurer has the burden of making the appropriate notifications for itself and the insured; the statute does not say that selected parts of a contract may not be canceled if there is not compliance with the statute. If the statute provides that a contract shall not be canceled without full statutory compliance, then the entire contract should not be canceled.
(ROR, Memorandum of Findings and Recommendation, p. 8.) In support of this interpretation of the statute, the hearing officer cited two out of state cases and the Superior Court case of Colagoivanni v. Premium Financing Specialists, Inc., Superior Court, judicial district of New Haven, Doc. No. 370642S (July 22, 1996) (Corradino, J.).
Reliance challenges the department's decision arguing: (1) that 49 C.F.R. § 1043.7(d) is not a "regulatory . . . provision . . . providing that the insurance contract may not be canceled unless notice is given to a governmental agency . . ." pursuant to General Statutes § 38a-170(d); and, in the CT Page 187 alternative, (2) that the failure to notify the ICC pursuant to 49 C.F.R. § 1043.7(d), of the cancellation of the motor carrier portion of the MOP did not negate the cancellation of the warehouse liability portion of the policy. Reliance additionally argues with understandably less vigor that the department violated General Statutes § 38a-160 by applying the provisions of General Statutes § 38a-170 to Reliance. In light of this court's disposition on the previous issue, the court will not address this argument.
The limited scope of this court's review of an agency's decision is well established. General Statutes § 4-183(i) provides that "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact" and "shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . affected by other error of law; clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ." The court's duty is only "to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
Nevertheless, where the question is one of law, as it is in this case, the deference accorded the agency's findings of fact does not apply. Fuhrman v. Freedom of Information Commission,243 Conn. 427, 431 (1997).
 The trial court need not defer to an incorrect decision of law by the agency. Connecticut Hospital Assn. v. Commission on Hospitals Health Care, supra, 140. "`Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law.
Board Of Education Of Ridgefield v. FOIC, 217 Conn. 153, 159
(1991). Further, "[a] state agency is not entitled, however, to special deference when its `determination of a question of law has not previously been subject to judicial scrutiny.' Dept. ofAdministrative Services v. Employees' Review Board, CT Page 188226 Conn. 670, 679, 628 A.2d 957 (1993)." Davis v. Norwich, 232 Conn. 311,317 (1995). General Statutes § 38a-170 reads in pertinent part:
 Sec. 38a-170. (Formerly Sec. 38-300). Cancellation of insurance contract on default of insured. (a) When an insurance premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement on account of any default on the part of the insured, the insurance contract or contracts shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with the provisions of this section. . . .
 (d) All statutory, regulatory, and contractual provisions or restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any such governmental agency, mortgagee or other third party on or before the second business day after the day it receives the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.
The court found no appellate authority interpreting either this statute or its predecessor, General Statutes § 38-300. Accordingly, the court affords no special deference to the department's interpretation of this statute. Hunnihan v.Mattatuck Mfg. Co., 243 Conn. 438, 448-449 (1997). Further, this court need not defer to this state agency's interpretation of the pertinent federal regulations.
The express purpose of 49 C.F.R. § 1043, et seq., is to provide for surety bonds and policies of insurance for motor carriers who engage in interstate and foreign commerce. In 49 C.F.R. § 1043.1(b) CT Page 189 the ICC requires that common carriers file "surety bonds, certificates of insurance, proof of qualifications as self-insurer, or other securities or agreements . . . conditioned upon such carrier making compensation to shippers or consignees for all property belonging to shippers or consignees and coming into possession of such carrier in connection with its transportation." Subsection (d) of § 1043.7 provides
 surety bonds, certificates of insurance and other securities or agreements shall not be cancelled or withdrawn until 30 days after written notice has been submitted to the Commission at its offices in Washington, D.C. on the prescribed form (Form BMC-35, Notice of Cancellation of Motor Carrier Policies of Insurance under 49 U.S.C. § 10927, and BMC-36, Notice of Cancellation Motor Carrier and Broker Surety Bonds, as appropriate) by the insurance company, surety or sureties, motor carrier, broker or other party thereto, as the case may be, which period of thirty (30) days shall commence to run from the date such notice on the prescribed form is actually received by the Commission.
In light of the clear language of the above regulations, the court is not persuaded by Reliance's first argument. Reliance bases its argument on the fact that a certificate of insurance is not an insurance contract, and since the regulation uses "certificate" and not "contract" the statute does not invoke this regulation. While it is true that a certificate of insurance is different from a policy of insurance, that difference is not relevant in this case. The certificate is proof of the existence of the underlying policy, and the regulations clearly address the existence of insurance. That certainly seems to be the purpose expressed in the ICC Notice of Cancellation in this case. (ROR, Ex. 34.)
The court is persuaded by Reliance's second argument, again in light of the language of the federal regulations. The essence of Reliance's argument is that noncompliance with General Statutes § 38a-170(d) should not affect the cancellation of the entire MOP policy, but only those portions which are the subject of the ICC regulations, the cargo transportation portions. The department contends that the whole policy remained in effect through May 13, 1995. CT Page 190
The three reported cases relied upon by the hearing officer for the proposition that there must be strict compliance with General Statutes § 38a-170(d) or the entire policy remains in effect do not have fact patterns analogous to this case. In all three of those cases, the insurance premium finance company failed to provide the insured with adequate notice of cancellation so that cancellation was ineffective. Kende LeasingCorp. v. A.I. Credit Corp. , 524 A.2d 1306 (NJ Super. A.D. 1987) (finance company's failure to mail insured notice of intent; retention of unearned premium by insurer); Altmeyer v. AICCO,Inc., 203 Cal.Rptr. 106 (Cal.App. 2 Dist. 1984) (finance company's notice of intent to cancel inadequate re: limitation of liability); Anzalone v. State Farm Mut. Ins. Co., 459 N.Y.S.2d 850
(A.D. 1983) (finance company failure to show mailing of cancellation notice).
Here, there is no question that the insured received proper notice of cancellation. Indeed, Reliance returned the unearned premiums as required under subsection (e) of § 38a-170. The record does not support a finding that the insured should have had reasonable expectations of coverage at the time of the loss. Further, the purpose behind the pertinent federal regulations requiring notice to the ICC was limited to protecting the shipper, consignee and public through cargo carrier insurance.Louis Mach. Co. v. AztecLines, 172 F.2d 746, 750 (1949).[2] The requirement of strict compliance of the notice provisions of § 38a-170(d) should effect rather than defeat a reasonable result that meets the purpose behind the regulatory scheme and the insured's reasonable expectations. See Bankers and ShippersIns. Co. of N.Y. v. McElveen, 668 F.2d 185 (1981); Russell v.Royal Ins., 554 N.Y.S.2d 977, 978-79 (Sup. 1990). Further, the purpose behind General Statutes § 38a-170 as contained within the chapter entitled Insurance Premium Finance Companies, is to provide protection to the insured, third parties and the premium finance company when a premium finance company intends to cancel the insurance upon the default of the insured. See 14 H.R. Proc., Pt 7 1971 Sess., pp. 3174-75; 14 S. Proc., Pt. 6, 1971 Sess., p. 2476. That purpose is not served by interpreting the statute to require Reliance to cover a loss not the subject of the insurance coverage mandated under the federal regulations. See Colagoivanniv. Premium Financing Specialists Inc., supra, citing Dunbar v.National Union Fire Ins. Co., 561 N.E.2d 450, 453 (Ill.App. 4 Dist. 1990) and Szymcak v. Midwest Premium Finance Co.,483 N.E.2d 851, 859 (Ohio App. 1984). Accordingly, the court finds that CT Page 191 Reliance's failure to file the notice required under 49 C.F.R. § 1043.7(d) until April 11, 1995, did not negate the cancellation of the MOP effective March 12, 1995, as to the warehouse liability coverage. That portion of the MOP having been properly cancelled, Reliance is not responsible for covering the loss Mariano suffered on April 4, 1995.
For the reasons stated above, the appeal is sustained.
DiPentima, J.